UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| AMERICAN EQUITY MORTGAGE, INC., | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:08CV01834 AGF |
| v. | ) |
| | ) |
| FIRST OPTION MORTGAGE, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This diversity matter is before the Court[1] on the motion of Defendant First Option Mortgage, LLC, to dismiss Counts III and IV of Plaintiff American Equity Mortgage, Inc.'s First Amended Complaint, for failure to state a claim upon which relief can be granted, and to strike Plaintiff's request for punitive damages in Count II. For the reasons set forth below, this motion shall be granted, and Plaintiff shall be granted leave to amend.

## BACKGROUND

Both Plaintiff and Defendant are in the business of providing residential real estate loans, and in particular, home loan re-financings. This action stems from a previous lawsuit that was filed by Plaintiff in this Court on August 3, 2006, Case No. 06 CV 1167

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

1

CDP, in which Plaintiff alleged that Defendant had engaged in tortious interference of contract, among other things. Plaintiff alleged in that case that it required its officers and branch managers to sign agreements not to compete and that Defendant knew, or should have known, that it had hired an individual who had signed such an agreement. This individual was also named as a defendant. The parties entered into a Settlement Agreement on May 1, 2007, which was sealed under court order. Both parties in the present action agree that under the Settlement Agreement, Plaintiff released Defendant from liability, and in exchange for the release, Defendant paid Plaintiff a certain amount of money and agreed that from May 1, 2007, through April 30, 2009, it would not employ any person who was employed by Plaintiff during that period. The case was dismissed on August 8, 2007.

On November 26, 2008, Plaintiff initiated the present lawsuit, claiming that Defendant breached the Settlement Agreement when it hired at least three named employees of Plaintiff, knowing that they were covered under the Settlement Agreement. Plaintiff sought compensatory damages, costs and fees, and an injunction. On February 23, 2009, the Court approved the parties' Stipulated Preliminary Injunction ("SPI"), pursuant to which Defendant was required, among other things, to dismiss any employees it had hired who had been employed by Plaintiff during the exclusionary period. The SPI further provided that Defendant could tell the employees to be dismissed that they were being dismissed in order for Defendant to honor the Settlement Agreement with Plaintiff, but that the terminations were not to "be construed to be the fault of or caused by"

Plaintiff.

On July 29, 2009, Plaintiff filed the First Amended Complaint, alleging new facts which Plaintiff states were revealed during discovery. In the amended complaint, Plaintiff named one more employee (for a total of four) who allegedly had been hired by Defendant in violation of the Settlement Agreement, and added three counts, requesting punitive damages in each. The new allegations include that Defendant's agents who were involved in hiring Plaintiff's former employees directed some of these employees to omit their past employment with Plaintiff from their resumes or employment applications, and thereby used "subterfuge and deception" to conceal Defendant's knowledge of these employees' employment history with Plaintiff. Plaintiff states that Defendant was the party with superior knowledge regarding the hiring of the employees in question, and that the Settlement Agreement created a relationship of trust and confidence between the parties.

In addition, Plaintiff alleges in the amended complaint that Defendant made false statements in connection with the SPI in this case, namely, that Defendant's violation of the Settlement Agreement was inadvertent, that this occurred because the four individuals involved did not disclose their employment with Plaintiff, and that Defendant in good faith made every effort to comply with the no-hire provision of the Settlement Agreement. Plaintiff further alleges that when Defendant terminated at least one of the former employees of Plaintiff, as Defendant was required to do under the SPI, Defendant told this individual, in violation of the SPI, that Defendant wanted to retain him but that

Plaintiff insisted that he be terminated.

The First Amended Complaint does not, itself, clearly identify the specific causes of action it asserts in each of the three new counts. And while the pleading is replete with factual allegations, they are often repetitive, and the operative contentions are often vague, such that it is difficult to discern the actual basis of the claim asserted. In Count II Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing, whereby Plaintiff maintains that Defendant "could not do anything that has the effect of destroying or injuring [Plaintiff's] rights to receive the fruits of the agreements," referring to the Settlement Agreement and perhaps also to the SPI. Plaintiff asserts that as a result of the "breach," it incurred damages, "including, but not limited to, consideration for [Defendant's] consent to the Settlement Agreement, loss of the benefit of its bargain, damages to its reputation, attorney's fees, expenses, and costs . . . ."

In Count III, which Plaintiff describes in its opposition brief as a claim for fraud, Plaintiff claims that Defendant violated Defendant's duty not to conceal the circumstances of the employment of the employees in question, violated its duty not to mislead Plaintiff to believe that Defendant was complying with its agreements with Plaintiff, and misrepresented how it would implement the dismissal of the employees in question. Plaintiff bases its claims that Defendant had a duty to disclose its hiring of the employees on the allegations, in paragraphs 46 and 47 of the First Amended Complaint, that Defendant possessed "superior knowledge" and that the parties had a relationship of trust and confidence. In this count, Plaintiff states that it relied to its detriment on

4

Defendant's conduct and was damaged by the conduct, without specifying the detriment or damages.

Count IV claims that Defendant "tortiously, wrongfully and intentionally breached its obligations to Plaintiff under the Settlement Agreement . . . to the detriment of, and in violation of, [Defendant's] duties owed to [Plaintiff.]"

In each of the three new counts, Plaintiff also asserts that Defendant's conduct was "knowing," "willful," and "malicious," warranting the imposition of punitive damages.

## ARGUMENTS OF THE PARTIES

In support of its motion to dismiss Count III, Defendant argues that it did not have a duty to disclose its breaches of the Settlement Agreement, and that Plaintiff failed to identify exactly how it detrimentally relied on Defendant's alleged concealments or misrepresentations or was damaged by them. Plaintiff counters that it was damaged when it detrimentally relied upon Defendant's statements and actions and released Defendant from liability in the Settlement Agreement. Plaintiff also states that "[b]y fraudulently concealing its actions, [Defendant] effectively induced [Plaintiff] into not exercising its rights earlier than it could have, and into litigating the motion for preliminary injunction differently." Pl.'s Resp. Br. at 8. Plaintiff argues that Defendant's duty to disclose the breaches of the Settlement Agreement is based on Defendant's superior knowledge and the relationship between the parties created by the Settlement Agreement. Plaintiff also argues that it can be inferred from Defendant's actions to conceal its breaches that Defendant never intended to abide by the provisions in the Settlement Agreement, but

entered into the Settlement Agreement to induce Plaintiff to release Plaintiff's claims for a lesser amount.

Defendant argues that Count IV should be dismissed because under Missouri law, punitive damages are not available for a beach of contract, even where the breach is willful, wanton, or malicious, unless an independent tort is alleged, something Plaintiff failed to do. Plaintiff counters that it alleges independent torts in Count III, including "fraudulent concealment in connection with the hiring of [Plaintiff's] former . . . employees and a possible claim for fraudulent inducement, as well as fraudulent concealment in connection with the defense of this litigation." Defendant replies that Count IV is redundant, and should be dismissed for the same reasons that Count III should be dismissed.

Defendant argues that Plaintiff is not entitled to punitive damages in Count II because a breach of the implied covenant of good faith and fair dealing is a species of a breach of contract claim. Plaintiff responds that Defendant's conduct, including having Plaintiff's former employees remove references to their employment with Plaintiff from their resumes, shows "malicious intent" and "outrageous conduct," and that, therefore, Plaintiff should be permitted to proceed with its punitive damage claim at this stage of the proceedings. According to Plaintiff, "the facts discovered to date create a reasonable inference that there was fraudulent conduct involved here which give rise to an independent tort." Pl.'s Memo at 13.

6

## DISCUSSION

To avoid a motion to dismiss, a plaintiff does not have to "set out in detail the facts upon which he bases his claim"; however, Federal Rule of Civil Procedure 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp., 550 U.S. at 557). Further, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

The parties agree that this diversity case is governed by Missouri law. The task of a federal court sitting in diversity is to attempt to predict how the forum state's highest court would resolve the issues. Allstate Ins. Co. v. Blount, 491 F.3d 903, 908 (8th Cir. 2007).

Under Missouri law, "[t]he general rule is that punitive damages may not be recovered in breach of contract actions." Peterson v. Cont'l Boiler Works, Inc., 783 S.W.2d 896, 902 (Mo. 1990) (citations omitted). "From this general rule, the courts have carved two exceptions." Id. at 902-03. The first exception is found "'where the breach amounts to an independent, willful tort and there are proper allegations of malice, wantonness, or oppression.'" Id. at 903 (quoting Williams v. Kansas City Pub. Serv. Co., 294 S.W.2d 36, 40 (Mo. 1956)). Absent an independent tort, "punitive damages are not

7

available where the basis of the complaint is breach of contract, even where the breach is intentional, willful, wanton or malicious." Id. The second exception "permits recovery of punitive damages when the breach of contract is coupled with violations of a fiduciary duty." Id. at 903 (citing Brown v. Coates, 253 F .2d 36 (D.C. Cir. 1958)).

In Missouri, the elements of a claim of fraud are:

> (1) a false, material representation; (2) the speaker's knowledge of the falsity or his ignorance of the truth; (3) the speaker's intent that the hearer act upon the representation in a manner reasonably contemplated; (4) the hearer's ignorance of the representation; (5) the hearer's reliance on the truth of the representation; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury.

Kempton v. Dugan, 224 S.W.3d 83, 87 (Mo. Ct. App. 2007).

The Court first concludes that Defendant's failure to disclose its alleged knowing breach of the Settlement Agreement does not state a claim for fraud. Neither the relationship arising from the Settlement Agreement and the SPI, nor the superior knowledge doctrine, created a duty on Defendant's part to disclose any subsequent breaches of the agreements. The relationship created by the Settlement Agreement and the SPI was not one of "trust and confidence" as defined by Missouri case law. See Schwimmer v. H. W. Freeman Const. Co., 607 S.W.2d 767, 770 (Mo. Ct. App. 1980) ("Although a confidential relationship cannot be precisely defined, it is generally synonymous with a fiduciary relationship."). And the fact that Defendants knew the circumstances of its hiring and dismissal of the employees in question after the Settlement Agreement was entered into did not in itself create a duty on Defendant's part to disclose

to Plaintiff these circumstances, i.e., the alleged subsequent violations of the Settlement Agreement and the SPI.

Refrigeration Industries, Inc. v. Nemmers, 880 S.W.2d 912, 919 (Mo. Ct. App. 1994), a case relied upon by Plaintiff, is inapposite. That case also arose out of a noncompete agreement. During hiring negotiations, the defendant told the plaintiff, his prospective employer, that he had not signed a noncompete agreement with his current employer. He did not correct this statement when he subsequently did sign such an agreement before negotiations with the plaintiff were finalized. The plaintiff's representative testified that had he known about the noncompete agreement, he would have substantially changed the deal with the defendant. The court held that these facts supported a claim for fraudulent misrepresentation, based on the defendant's failure to disclose the change of circumstances and the defendant's detrimental reliance thereon. The court explained that "[c]oncealment of a material fact of a transaction which a party has a duty to disclose constitutes fraud as much as though affirmative representation is given. Under Missouri law, a duty to disclose arises when the silent party possesses "superior knowledge . . . [that is] not within the fair and reasonable reach of the other party. . . ." 880 at S.W.2d at 918.

Here, to the contrary, Plaintiff's allegations do not show concealment of a material fact "of a transaction," nor a duty to disclose. In Refrigeration Inds. the concealment occurred while the parties were still negotiating their transaction. Here the alleged non-disclosures occurred well after the Settlement Agreement was executed. In entering into

9

the Settlement Agreement and the SPI, Plaintiff cannot have relied on Defendant's non-disclosures of its subsequent alleged breaches thereof. In sum, Count III does not state a claim of fraud based on any alleged failure to disclose subsequent breaches of the agreements.

In its opposition brief, Plaintiff states that the facts could also support an inference that Defendant never intended to honor the Settlement Agreement, and presumably, that Plaintiff was fraudulently induced to enter into the Settlement Agreement. Fraudulent inducement is a claim recognized in Missouri, see, e.g., Trimble v. Pracna, 167 S.W.3d 706 (Mo. 2005), however none of the allegations in the First Amended Complaint state a claim of fraudulent inducement to enter into the Settlement Agreement. While Plaintiff argues that an intent not to abide by the terms of the Settlement Agreement may be inferred, both Missouri law and Rule 9(b) of the Federal Rules of Civil Procedure require greater specificity. In the First Amended Complaint, Plaintiff nowhere alleges such a fraudulent intent by Defendant.

Although it does not clearly do so, the First Amended Complaint could also be read to assert a claim of fraudulent inducement to enter into the SPI. Plaintiff, however, does not plead any such claim with the degree of specificity required, and nowhere alleges how it relied to its detriment or was damaged by entering into the SPI. Accordingly, as currently pleaded, Plaintiff's claim for punitive damages in Count IV is

deficient, as no independent tort related to the hirings at issue has properly been alleged.[2]

Plaintiff's request for punitive damages in Count II, for breach of the implied covenant of good faith and fair dealing, also fails. Under Missouri law, a claim for a breach of the implied covenant of good faith and fair dealing is a contract claim. Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 412 (Mo. Ct. App. 2000). Because neither exception to the general rule, that punitive damages are not available in a breach of contract action, has been adequately pleaded in the First Amended Complaint, Plaintiff is not entitled to recover punitive damages on the claim asserted in Count II. Cf. Chariton Vet Supply, Inc. v. Moberly Motor Co., No. 2:08CV47MLM, 2009 WL 1011500, *5 (E.D. Mo. April 15, 2009) (dismissing the plaintiff's claim for punitive damages for breach of contract and breach of the covenant of good faith and fair dealing under Missouri law.)

The Court will grant Plaintiff's alternative request for additional time to file a further amended complaint that comports with the Court's above rulings.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Counts III and IV of Plaintiff's First Amended Complaint for failure to state a claim upon which relief

---

[2] In its opposition brief, Plaintiff also references "fraudulent concealment in connection with the defense of this litigation" as facts supporting an "independent tort." Count IV, fairly read, however, references only a breach of the Settlement Agreement and Defendant's obligation not to hire former American Equity employees.

11

can be granted, and to strike Plaintiff's request for punitive damages in Count II, is **GRANTED**. [Doc. #45]

      **IT IS FURTHER ORDERED** that Plaintiff shall have up to and including January 14, 2010, to file a new amended complaint.

                                                            */s/ Audrey G. Fleissig*
                                                    AUDREY G. FLEISSIG
                                                    UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of December, 2009.